## Certification

LINCOLN PURDY, being of full age, duly certifies as follows:

1. I am a Vice President of Starr Marine, a division of Starr Indemnity & Liability Company.

2. I certify to the best of my knowledge, the attached Hull & Machinery/Protection & Indemnity Policy and the attached endorsements are true, complete and accurate copies for the following insured:

|  |  |
|---|---|
| Named Insured: | Cashman Equipment Corporation |
|  | Servicio Marina Superior, LLC |
|  | CHM Maritime, S.A.P.I. de C.V. |
|  | Cashman Caspian, LLP |
|  | Cashman Canada, Inc. |
|  | Cashman de Colombia S.A.S. |
| Address: | 41 Brooks Drive |
|  | Braintree, MA 02184 |
| Policy Number: | MASIHBN 000127 15 |
| Policy Period: | December 31, 2015 - December 31, 2016 |
| Policy Type: | Hull & Machinery/Protection & Indemnity |

_Lil S Purdy 2/31/2023_

Lincoln Purdy

Dated: February **21**, 2023
Boston, Massachusetts



EXHIBIT

A

Renewal of: **MASIHBN000012712**                                          Policy No.: **MASIHBN000012714**

## Starr Indemnity & Liability Company

**One International Place, 13th Floor, Boston, MA 02110**

Amount:    **$AS WITHIN**               Rate:    **FLAT**          Premium: **$66,300 – As Within**

Commission:     **20%**

### BY THIS POLICY OF INSURANCE

Does Insure:         **Cashman Equipment Corporation and As Attached.**

For the account of:     **THEMSELVES**

Loss, if any, payable to:   **ASSURED OR ORDER**

To the Amount of:     **AS WITHIN** ------------------------------------------ Dollars

From:   **December 31, 2014, 12:01 AM EST**           To:     **December 31, 2016, 12:01 AM EST**

On:     **Difference in Conditions/Difference in Limits Hull and Machinery/Protection & Indemnity - As Attached**

Subject to all of the terms, conditions and exclusions the form(s) attached hereto:

**Taylor Hull Form 1953 (Rev. 70), with lines 39 through 60 deleted;**
**American Institute Hull War Risks and Strikes Clauses (9/29/09);**
**Addendum to American Institute Hull War Risk and Strikes Clauses (4/1/84);**
**AIMU 23 Protection & Indemnity Clauses incl. Collision & Tower's Liability Endorsements;**
**American Institute War Risk Protection & Indemnity Clauses (SP-22B);**
**Difference in Conditions/Difference in Limits Clause; Boom Clause;**
**AIMU Extended Radioactive Contamination Exclusion w/ USA Buyback;**
**AIMU Chemical, Biological, Biochemical & Electromagnetic Exclusion;**
**AIMU US Trade & Economic Sanctions Endorsement; Additional Exclusions & Warranties;**
**Thirty Day Notice of Cancellation, except ten days for non-payment of premium; Annual Review Clause**
**Inclusion of Additional Assured/Loss Payee Clause; TRIA Exclusion**

    **THIS POLICY IS MADE AND ACCEPTED SUBJECT TO** the conditions which are hereby specifically referred to and made part of this Policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive or be deemed to have waived any provision or condition of this Policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the Assured unless so written or attached.
    In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but it shall not be valid unless countersigned by a duly authorized representative of the Company.

_____                              _____
General Counsel                                           President

STARR MARINE DIVISION

**Countersigned at Boston, MA**             By:.................................................
**This 25th day of January 2014**                   **Authorized Representative**
                                          **Starr Indemnity & Liability Company**

## <u>Claims Reporting Procedures</u>

All claims should be reported directly to Carolyn O'Connor at VeriClaim, Inc., with a copy to Robert Fox at Starr Adjustment Services, Inc.  Their contact information is as follows:


Ms. Carolyn O'Connor
Hull and Liability Manager
VeriClaim, Inc.
120 Broadway - Suite 900
New York, NY  10271

Email:      coconnor@vericlaiminc.com
Direct:      (212) 266-4255
Facsimile:  (212) 406-3932
Cell:        (917) 330-1954



Mr. Robert Fox
Regional Claims Manager
Starr Adjustment Services, Inc.
399 Park Avenue, 9th Floor
New York, NY 10022

Email:      robert.fox@starrcompanies.com
Direct:      646-227-6687



# DECLARATIONS

**POLICY NUMBER:**     **MASIHBN00012714**

**NAMED ASSURED:**     Cashman Equipment Corporation
Servicio Marina Superior, LLC
CHM Maritime, S.A.P.I. de C.V.
Cashman Caspian, LLP
Cashman Canada, Inc.
Cashman de Colombia S.A.S.

**ADDRESS:**     41 Brooks Drive
Braintree, MA 02184

**POLICY PERIOD:**     From:     December 31, 2014, 12:01 A.M. Eastern Standard Time
To:     December 31, 2016, 12:01 A.M. Eastern Standard Time

**PREMIUM:**     REDACTED – US Observers Endorsement

For reference:

Locally Admitted Policies (incl. taxes & fees)

| | | |
|---|---|---|
| CHM Maritime, S.A.P.I. de C.V. (Collected in US) | Hull: | REDACTED |
| | P&I: | |
| Cashman Canada, Inc. | Hull: | |
| | P&I: | |
| Cashman Caspian, LLP | Hull: | |
| | P&I: | |

**INSURED VESSELS:**     **CHM Maritime, S.A.P.I. de C.V.**
Tug "Ocean Raider 17"
Tug "Atlas"
Tug "Marina Orion"
Tug "Marina Polaris"
Tug "Miss Molly"
"JMC-2508"
"JMC-2509"
"JMC-2511"
"JMC-2515"
"JMC-2516"
"JMC-3003"
"JMC-3009"

**Cashman Caspian, LLP**
"JMC-24"
"JMC-44"
"JMC-244"
"JMC-245"



**Cashman Canada, Inc.**
"JMC-185"

*Section I - HULL AND MACHINERY*

| | Vessel | Agreed Value | Deductible | Annual Rate Incl. War | Annual Premium |
|---|---|---|---|---|---|
| 1 | Tug "Ocean Raider 17" | $4,200,000 | $50,000 | REDACTED | |
| 2 | Tug "Atlas" | $8,000,000 | $100,000 | | |
| 3 | Tug "Marina Orion" | $4,000,000 | $50,000 | | |
| 4 | Tug "Marina Polaris" | $4,000,000 | $50,000 | | |
| 5 | Tug "Miss Molly" | $10,500,000 | $100,000 | | |
| 6 | "JMC-2508" | $2,900,000 | $50,000 | | |
| 7 | "JMC-2509" | $2,900,000 | $50,000 | | |
| 8 | "JMC-2511" | $2,900,000 | $50,000 | | |
| 9 | "JMC-2515" | $2,900,000 | $50,000 | | |
| 10 | "JMC-2516" | $2,900,000 | $50,000 | | |
| 11 | "JMC-3003" | $5,000,000 | $50,000 | | |
| 12 | "JMC-3009" | $5,000,000 | $50,000 | | |
| 13 | "JMC-24" | $5,000,000* | $150,000 | | |
| 14 | "JMC-44" | $5,000,000* | $150,000 | | |
| 15 | "JMC-244" | $1,450,000* | $150,000 | | |
| 16 | "JMC-245" | $1,300,000* | $150,000 | | |
| 17 | "JMC-185" | $1,700,000 | $ 50,000 | | |

*Represents 50% quota share amount.

DEDUCTIBLE:        As Per Schedule of Vessels

SUBJECT TO:        Taylor Hull Form 1953 (Rev. 70), with lines 39 through 60 deleted;
American Institute Hull War Risks and Strikes Clauses (9/29/09);

**Applicable to Cashman Caspian, LLP**
Notwithstanding the forgoing, in the event of a single occurrence involving more than one vessel scheduled above, the total deductible for that occurrence under this policy shall not exceed $250,000, all vessels combined.

Deductible to apply in the event of TL or CTL

Navigation limited to Port Risk Only

**Applicable to Cashman Canada, Inc.**
Perils amended to include "theft" and "theft of entire vessel"

EXCLUSION:        Collision Liability



*Section II – PROTECTION & INDEMNITY/COLLISION & TOWER'S LIABILITY*

| | Vessel | Annual Premium |
|---|---|---|
| | | |
| 1 | Tug "Ocean Raider 17" | REDACTED |
| 2 | Tug "Atlas" | |
| 3 | Tug "Marina Orion" | |
| 4 | Tug "Marina Polaris" | |
| 5 | Tug "Miss Molly" | |
| 6 | "JMC-2508" | |
| 7 | "JMC-2509" | |
| 8 | "JMC-2511" | |
| 9 | "JMC-2515" | |
| 10 | "JMC-2516" | |
| 11 | "JMC-3003" | |
| 12 | "JMC-3009" | |
| 13 | "JMC-24" | |
| 14 | "JMC-44" | |
| 15 | "JMC-244" | |
| 16 | "JMC-245" | |
| 17 | "JMC-185" | |
| | | |

LIMIT OF LIABILITY:    $1,000,000. any one occurrence, Combined Single Limit.

DEDUCTIBLES:    **Vessels 1-12**
Bodily Injury
$5,000 any one occurrence

All Other Claims
$50,000 any one occurrence

**Vessels 13-16**
Bodily Injury
$25,000. any one occurrence, each vessel

All Other Claims
$150,000. any one occurrence, each vessel

**Vessel 17**
Bodily Injury
$5,000 any one occurrence

All Other Claims
$50,000 any one occurrence

CONDITIONS:    AIMU 23 Protection & Indemnity Clauses;
American Hull Insurance Syndicate War Risk Protection & Indemnity Clauses (SP-22B)
Collision & Tower's Liability Endorsement (Tugs);
Collision Liability Endorsement (Barges).
US Observers Endorsement (CHM Maritime only)



| EXCLUSIONS: | Employment Related Practices; |
| | Employees and crew of the Named Assured; |

***APPLICABLE TO ALL SECTIONS***

RATES/PREMIUMS:   Except where noted, all premium is to be billed and collected locally in Canada and Kazakhstan as applicable.
All premiums are Cancelling Returns Only (CRO)
Full Premium If Lost (FPIL)

CONDITIONS:   Difference in Conditions/Difference in Limits Endorsement;
Additional Conditions, Warranties and Exclusions
Annual Review Clause

NAVIGATION:   **CHM Maritime, S.A.P.I. de C.V.**
American Institute Trade Warranties

**Cashman Canada, Inc.**
Inland and coastal waters of Newfoundland, Canada, between and including St. John's and Bull Arm, not north of 49º N and not east of 52º W.

**Cashman Caspian, LLP**
Port risk only – Port of Bautino, Topaz Base

Both fleets also subject to current Lloyds' Joint War Risk Committee Listed Areas with respect to war risk coverage afforded hereunder.

WARRANTED:   1)   No release to towers.
2)   No release to stevedores.

EXCLUSIONS:   TRIA

STARR ✦ MARINE
A Member of Starr Companies

# *SECTION 1 - HULL AND MACHINERY*



*TAYLOR*
1953
(Rev. 70)

1    In consideration of the premium and the stipulations, terms and conditions hereinafter mentioned, this Company
2  does hereby insure:
3  Assured   **Cashman Equipment Corporation and As Attached**
4
5
6  Whose address is   **161 Granite Avenue, Boston, MA  02124**
7  Loss, if any, payable to          **Assured, or order**
8
9
10  Upon the____**As Per Declarations**_____  called ___**As Per Declarations**_____
11  Her hull, tackle, apparel, engines, boilers, machinery,   appurtenances, equipment, stores, boats and furniture
12  From the   **31st**_____ day of   **December**_____  **2014** , at 12:01 AM, Standard Time at place of issuance
13  Until the   **31st**_____ day of   **December**_____  **2016** , at 12:01 AM, Standard Time at place of issuance

| AMOUNT INSURED HEREUNDER | RATE | PREMIUM | AGREED VALUATION |
|---|---|---|---|
| $ **As Per Declarations** | **As Per Declarations** % | $ **As Per Declarations** | $ **As Per Declarations** |

14

15        Touching the adventures and perils which this Company is contented to bear and take upon itself, they are
16  of the waters named herein, fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and
17  mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein.

18        This insurance also covers loss of or damage to the vessel named herein caused by explosion on shipboard or
19  elsewhere.

20  This insurance also covers loss of or damage to the vessel named herein directly caused by:
21        Accidents in loading, discharging or handling cargo, or in bunkering;
22        Accidents in going on or off, or while on drydocks, graving docks, ways, marine railways, gridirons or
23        pontoons;
24        Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting
25        of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and
26        expense of replacing or repairing the defective part);
27        Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
28        Contact with aircraft, rockets or similar missiles, or with any land conveyance;
29        Negligence of charterers and/or repairers, provided such charterers and/or repairers are not assured(s)
30        hereunder;
31        Negligence of master, mariners, engineers or pilots;
32  provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers
33  of the vessel, or any of them.

34        General average, salvage and special charges payable as provided in the contract of affreightment, or fail-
35  ing such provision, or there be no contract of affreightment, payable in accordance with the laws and usages
36  of the port of New York. Provided always that when an adjustment according to the laws and usages
37  of the port of destination is properly demanded by owners of the cargo, general average shall be paid in accord-
38  ance with same.

39  ~~And it is further agreed that if the vessel named herein and/or her tow, if any, shall come into collision with any~~
40  ~~other ship or vessel other than her tow, if any, and the assured in consequence of the vessel named herein being at~~
41  ~~fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in~~
42  ~~respect of such collision, this Company will pay its proportion of such sum or sums so paid as the amount insured~~
43  ~~hereunder bears to the agreed valuation  of the vessel named herein, provided always that this Company's liability in~~
44  ~~respect of any one such collision shall not exceed the amount insured hereunder. And in cases where the liability of~~
45  ~~the vessel named herein has been contested or proceedings have been taken to limit liability, with the consent in writ-~~
46  ~~ing of this Company, this Company will also pay a like proportion of the costs which the assured shall thereby incur,~~
47  ~~or be compelled to pay; but when both vessels are to blame, then unless the liability of the owners of one or both such~~
48  ~~vessels becomes limited by law, claims under this Collision Liability Clause shall be settled on the principle of cross-~~
49  ~~liabilities as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such~~
50  ~~one half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance~~
51  ~~or sum payable by or to the assured in consequence of such collision. Provided always that this clause shall in no~~
52  ~~case extend to any sum which the assured may directly, indirectly, or otherwise incur or become liable to pay or~~
53  ~~shall pay for: removal, destruction or abatement of, or any attempt or failure or neglect to remove, destroy or abate~~
54  ~~obstructions or wrecks and/or their cargoes or any hazard resulting therefrom; loss of, or damage to, or expense,~~

STARR ✦ MARINE
A Member of Starr Companies

55 ~~including demurrage and/or loss of use thereof, in connection with any fixed or movable object, property or thing~~
56 ~~of whatever nature (excepting other vessels and property thereon); loss of or damage to her tow; cargo, baggage~~
57 ~~or engagements of the vessel named herein; or of her tow; or for loss of life of, or injury to, or illness of,~~
58 ~~any person. And provided also that in the event of any claim under this clause being made by anyone other than the own-~~
59 ~~ers of the vessel named herein, he shall not be entitled to recover in respect of any liability to which the owners of the~~
60 ~~vessel as such would not be subject, nor to a greater extent than the owners would be entitled in such event to recover.~~

61      In case of any loss or misfortune it shall be lawful and necessary for the assured, their factors, servants and
62 assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the vessel named herein,
63 or any part thereof, without prejudice to this insurance, to the charges whereof this Company will contribute as here-
64 inafter provided. It is agreed that the acts of the assured or this Company, or their agents, in recovering,
65 saving and preserving the property insured in case of disaster shall not be considered a waiver or an acceptance
66 of an abandonment, nor as affirming or denying any liability under this policy; but such acts shall be con-
67 sidered as done for the benefit of all concerned, and without prejudice to the rights of either party.

68      Warranted that in case of any casualty or loss which may result in a claim under this policy the assured shall
69 give this Company prompt notice thereof and reasonable opportunity to be represented on a survey of the damage,
70 each party to name a surveyor, which two surveyors shall proceed to  draw specifications as to the extent of the
71 damage and the work required to make the damage good. If the two surveyors agree, such specifications shall be
72 binding on both this Company and the assured, subject nevertheless to policy terms and conditions and the question
73 of whether or not the disaster and resulting loss or damage are covered by this policy. In the event the two survey-
74 ors cannot agree, they must select an umpire, and in the event they cannot agree upon an umpire, either party
75 hereto may apply to the United States District Court for the district in which the home port of vessel named
76 herein is located for the appointment of an umpire, pursuant to the United States Arbitration Act. The decision of
77 the umpire so appointed shall have the same force and effect as the specifications aforesaid. When specifications
78 have been drawn in either of the modes aforesaid, if the Company shall be dissatisfied with the terms which the
79 assured may obtain for the repair of the damage as specified by said survey, then this Company may require the
80 surveyors or the umpire to submit the specifications prepared as aforesaid to such shipyard, repair men, boat build-
81 ers and shipwrights, as may be selected by such surveyors or the umpire, with a request for bids for such repairs.
82 If after reception of such bids, the assured shall elect to accept some other bid than that of the lowest bidder, this
83 Company shall be liable only for its proportion of so much of the sum actually expended to effect repairs
84 specified by the surveyors for its account as does not exceed said lowest bid. In no event however shall this
85 Company respond for an amount in excess of its proportion of the amount actually expended by the assured in
86 effecting such repairs.
87 With respect to physical loss or damage to the vessel named herein this Company shall be liable only for
88      such proportion of such loss or damage as the amount insured hereunder bears to the agreed valuation.
89 In the event of expenditure under the sue and labor clause, this Company will pay the proportion of such
90      expenses that the amount insured hereunder bears to the agreed valuation of the vessel named herein, or that the
91      amount insured hereunder, less loss and/or damage payable under this policy, bears to the actual value of the
92      salved vessel, whichever proportion shall be less.
93 When the contributory value of the vessel named herein is greater than the agreed valuation stated herein
94      the liability of this Company for general average contribution (except in respect of amount made good to the
95      vessel) or salvage shall not exceed that proportion of the total contribution due from the vessel that the amount
96      insured hereunder bears to the contributory value; and if because of damage for which this Company is liable as
97      particular average the value of the vessel has been reduced for the purpose of contribution, the amount of the
98      particular average claim under this policy shall be deducted from the amount insured hereunder and this Com-
99      pany shall be liable only for the proportion which such net amount bears to the contributory value.
100      The sum of **As Per Declarations** shall be deducted from the total amount of any or all claims (including claims
101 for sue and labor, collision liability, general average and salvage charges) resulting from any one accident. This
102 deduction does not apply to claims for total or constructive total loss. For the purpose of this clause each accident
103 shall be treated separately, but it is agreed that a sequence of damages arising from the same accident shall be
104 treated as due to that accident.
105 In case of loss, such loss to be paid in thirty days after satisfactory proof of loss and interest shall have
106      been made and presented to this Company, (the amount of any indebtedness due this Company from the assured
107      or any other party interested in this policy being first deducted).
108 Upon making payment under this policy the Company shall be vested with all of the assured's rights of re-
109      covery against any person, corporation, vessel or interest and the assured shall execute and deliver instruments
110      and papers and do whatever else is necessary to sever such rights.
111 Any agreement, contract or act, past or future, expressed or implied, by the assured whereby any right of re-
112      covery of the assured against any vessel, person or corporation is released, decreased, transferred or lost which
113      would, on payment of claim by this Company, belong to this Company but for such agreement, contract or act shall
114      render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that
115      said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of this
116      Company, but the Company's right to retain or recover the full premium shall not be affected.
117      This Company shall have the option of naming the attorneys who shall represent the assured in the prosecution
118 or defense of any litigation or negotiations between the assured and third parties concerning any claim, loss or inter-



119 est covered by this policy, and this Company shall have the direction of such litigation or negotiations. If the assured
120 shall fail or refuse to settle any claim as authorized by the Company, the liability of the Company to the assured
121 shall be limited to the amount for which settlement could have been made.

122     It is a condition of this policy that no suit, action or proceeding for the recovery of any claim for physical
123 loss or damage to the vessel named herein shall be maintainable in any court of law or equity unless the same
124 be commenced within twelve (12) months next after the calendar date of the happening of the physical loss or
125 damage out of which the said claim arose. Provided, however, that if by the laws of the state within which this
126 policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding
127 be commenced within the shortest limit of time permitted, by the laws of such state, to be fixed herein.

128     In event of damage, cost of repairs to be paid without deduction of one-third, new for old.

129     If claim for total loss is admitted under this policy and sue and labor expenses have been reasonably incurred in
130 excess of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of
131 such excess that the mount insured hereunder (without deduction for loss or damage) bears to the agreed valuation
132 or the sound value of the vessel named herein at the time of the accident, whichever value was greater.

133     It is a condition of this insurance that this Company shall not be liable for unrepaired damage in addition
134 to a total or constructive total loss.

135     No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and re-
136 pairing the vessel named herein shall exceed the agreed valuation.

137     In ascertaining whether the vessel named herein is a constructive total loss the agreed valuation shall be
138 taken as the repaired value, and nothing in respect of the damaged or break-up value of the vessel or wreck shall
139 be taken into account.

140     In the event of total or constructive total loss, no claim to be made by this Company for freight, whether
141 notice of abandonment had been given or not.

142     Any deviation beyond the navigation limits provided herein shall void this policy; but on the return of the
143 vessel in a seaworthy condition, within the limits herein provided, this policy shall reattach and continue in full
144 force and effect, but in no case beyond the termination of this policy.

145     Warranted by the assured that there shall be no other insurance covering physical loss or damage to the
146 vessel named herein other than that which is  provided in lines 15 through 33 hereof but permission granted
147 to carry other insurance of whatever kind or nature not covered by this policy or additional amounts of insurance
148 of the kind or nature covered by this policy other than provided in lines 15 through 33.

149     This insurance shall be void in case this policy or the vessel named herein, shall be sold, assigned, transferred
150 or pledged, or if there be any change of management or charter of the vessel, without the previous consent in
151 writing of this Company.

152     Notwithstanding anything to the contrary contained in this policy, this insurance is warranted free from
153 any claim for loss, damage  or expense caused by or resulting from capture, seizure, arrest, restraint or detainment,
154 or the consequences thereof or of any attempt thereat, or any taking of the vessel, by requisition or otherwise,
155 whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or war-
156 like operations (whether there by a declaration of war or not), but the foregoing shall not exclude collision or
157 contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or
158 torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of
159 the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein,
160 is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power"
161 includes any authority maintaining naval, military or air forces in association with power; also warranted free,
162 whether in time of peace or war, from all loss, damage or expense  caused by any weapon of war employing atomic
163 or nuclear fission and/or fusion or other reaction or radioactive force or matter.

164     Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, of civil strife
165 arising therefrom, or piracy.

166     If war risks are thereafter insured by endorsement on the policy, such endorsement shall supersede the above
167 warranty only to the extent that their terms are inconsistent and only while such war risk endorsement remains
168 in force.

169     Warranted free of loss or damage in consequence of strikes, lockouts, political or labor disturbances, civil
170 commotions, riots, martial law, military or usurped power or  malicious acts.

171 ~~Either party may cancel this policy by giving standard notice in writing; if at the option of this Company~~
172 ~~pro rata rates, if at the request of the assured short rates to be charged — and arrival.~~ VOID

173     NAVIGATION LIMITS -- SPECIAL CONDITIONS -- ENDORSEMENTS, ETC.

174 Attached to and made part of Policy No. **MASIHBN00012714** of the **Starr Indemnity & Liability Company**



American Institute                                                                                      87C-108
Hull War Risks and Strikes Clauses
(Including Automatic Termination and Cancellation Provisions)
For Attachment to American Institute Hull Clauses
September 29, 2009

1

2      To be attached to and form a part of Policy No. **MASIHBN00012714**  of the **Starr Indemnity & Liability Company**

3      ………………………………………………………………………………………………………………………

4

5      This insurance, subject to the exclusions set forth herein, covers only those risks which would be covered by the attached

6      Policy (including collision liability) in the absence of the WAR, STRIKES AND RELATED EXCLUSIONS clause contained

7      therein but which are excluded thereby and which risks shall be construed as also including:

8      1.    Any mine, bomb or torpedo not carried as cargo on board the Vessel;

9      2.    Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or

10           matter;

11     3.    Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy;

12     4.    Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped  power;

13     5.    Malicious acts or vandalism to the extent only that such risks are not covered by the attached Policy;

14     6.    Hostilities or warlike operations (whether there be a declaration of war or not) but this paragraph (6) shall not include

15           collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy

16           weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power which act is

17           independent of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any

18           other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval,

19           military or air forces in association with a power;

20     7.    Confiscation or expropriation;

21     8.    Any act perpetrated by terrorists or any act carried out by any person or persons acting primarily from a political,

22           religious or ideological motive;

23     9.    Any threat of terrorist activity, actual or perceived, including closure of ports or blockage of waterways resulting

24           therefrom.

25     **EXCLUSIONS**

26     This insurance does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

27     a.    Any hostile detonation of any weapon of war described above in paragraph (2);

28     b.    Outbreak of war (whether there be a declaration of war or not) between any of the following countries: United States

29           of America, United Kingdom, France, the Russian Federation or the People's Republic of China;

30     c.    Delay or demurrage;

31     d.    Requisition of preemption;

32     e.    Arrest, restraint or detainment under customs or quarantine regulations and similar arrests, restraints or detainments

33           not arising from actual or impending hostilities;

34     f.    Capture, seizure, arrest, restraint, detainment, confiscation or expropriation by the Government of the United States

35           or of the country in which the Vessel is owned or registered.

STARR ✦ MARINE
A Member of Starr Companies

36  **HELD COVERED AND OTHER PROVISIONS**

37     The held covered clause appearing under the heading ADVENTURE in the attached Policy is deleted and the following
38  clause substituted therefore: -
39         "Subject to the provisions of the Automatic Termination and Cancellation Clauses below, held covered in the event of
40         any breach of conditions as to loading or discharging of cargo at sea, or towage or salvage activities provided (a)
41         notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any
42         amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured."

43     If at the natural expiry time of this insurance the Vessel is at sea, this insurance will be extended, provided previous notice
44  be given to the Underwriters, for an additional premium at a rate to be named by the Underwriters, until midnight Local Time
45  the day on which the Vessel enters the next port to which she proceeds and for 24 hours thereafter, but in no event shall such
46  extension affect or postpone the operation of the Automatic Termination and Cancellation Clauses below.

47     The provisions of the attached Policy with respect to constructive Total Loss shall apply only to claims arising from
48  physical damage to the Vessel.

49     In the event that the Vessel shall have been the subject of capture, seizure, arrest, restraint, detainment, confiscation or
50  expropriation, and the Assured, by reason thereof, has lost the free use and disposal of the Vessel for continuous period of
51  twelve (12) months (even though condemnation has not occurred), then for the purposes of ascertaining whether the Vessel is
52  a constructive Total Loss, the Assured shall be deemed to have been deprived of the possession of the Vessel without any
53  likelihood of recovery.

54     "Restraint" as used in lines 49 to 53 above shall be deemed to include the inability of the Vessel to sail from any port or
55  place to the high seas because of closure of the connecting waterway to all vessels of similar size or draft due to blockage of
56  such waterway caused by hostilities or warlike operations.

57     Warranted not to abandon in case of capture, seizure, arrest, restraint, detention, confiscation or expropriation until after
58  condemnation of the property insured, or, in circumstances set forth at lines 49 to 56 above, after twelve (12) months,
59  whichever first occurs.

60  **AUTOMATIC TERMINATION AND CANCELLATION CLAUSES**

61  A. This insurance and any extension thereof, unless sooner terminated by the provisions of section B or C, shall terminate
62     automatically upon and simultaneously with the occurrence of any hostile detonation of any nuclear weapon of war as
63     defined above, wheresoever or whensoever such detonation may occur and whether or not the Vessel may be involved.
64  B. This insurance and any extension thereof, unless sooner terminated by the provisions of section A or C, shall terminate
65     automatically upon and simultaneously with the outbreak of war, whether there be a declaration of war or not, between
66     any of the following countries: United States of America, United Kingdom, France, the Russian Federation or the People's
67     Republic of China.
68  C. This insurance and any extension thereof, unless sooner terminated by section A or B, shall terminate automatically if and
69     when the Vessel is requisitioned, either for title or use.
70  D. This insurance and any extension thereof may be cancelled at any time at the Assured's request, or by Underwriters upon
71     seven (7) days' written notice being given to the Assured, but in no event shall such cancellation affect or postpone the
72     operation of the provisions of sections A, B or C. Written or electronic notice sent to the Assured at his (its) last known
73     address shall constitute a complete notice of cancellation and such notice mailed or sent electronically to the said
74     Assured, care of the broker who negotiated this insurance, shall have the same effect as if sent to the said Assured direct.
75     The mailing or electronic sending of notice as foresaid shall be sufficient proof of notice and the effective date and hour of

76   cancellation shall be seven (7) days from midnight Local Time of the day on which such notice was mailed or sent
77   electronically as aforesaid. Underwriters agree, however, to reinstate this insurance subject to agreement between
78   Underwriters and the Assured prior to the effective date and hour of such cancellation as to new rate of premium and/or
79   conditions and/or warranties.

80   **RETURNS OF PREMIUM**

81   The RETURNS OF PREMIUM clause of the attached Policy is deleted and the following substituted therefore: -
82   "In the event of an automatic termination or cancellation of this insurance under the provisions of sections A, B, C or
83   D above, or if the Vessel be sold, pro rata net return of premium will be payable to the Assured, provided always that
84   a Total Loss of the Vessel has not occurred during the currency of this Policy. In no other event shall there be any
85   return of premium."

86   THIS INSURANCE SHALL NOT BECOME EFFECTIVE IF, PRIOR TO THE INTENDED TIME OF ITS ATTACHMENT,
87   THERE HAS OCCURRED ANY EVENT WHICH WOULD HAVE AUTOMATICALLY TERMINATED THIS INSURANCE
88   UNDER THE PROVISIONS OF SECTIONS A, B, OR C HEREOF HAD THIS INSURANCE ATTACHED PRIOR TO SUCH
89   OCCURRENCE.

**ALL OTHER TERMS, LIMITATIONS, CONDITIONS AND EXCEPTIONS REMAINING UNCHANGED.**

STARR MARINE
A Member of Starr Companies

# *SECTION 2 – PROTECTION & INDEMNITY/ COLLISION & TOWER'S LIABILITY*



**AIMU**                                                                                                  **23**

Protection and Indemnity (P and I) Clauses
June 2, 1983

To be attached to and form part of Policy No. <u>MASIHBN00012714</u> of <u>Starr Indemnity & Liability Company</u>.                      1
(hereinafter "the Underwriters")                                                                          2

THE FOLLOWING CLAUSES ARE SUBSTITUTED FOR THOSE OF THE POLICY FORM TO WHICH                               3
THEY ARE ATTACHED, THE LATTER BEING VOID, EXCEPT FOR THOSE PROVISIONS REQUIRED                            4
BY LAW. CAPTIONS, BELOW, ARE FOR EASE OF REFERENCE ONLY AND ARE NOT TO BE USED TO                         5
INTERPRET THE CLAUSES.                                                                                    6

**ASSURED**

This Policy insures <u>Cashman Equipment Corporation and As Attached</u>                                   7
                                                                                                         8
(hereinafter, "the Assured") The Underwriters waive all rights of subrogation against affiliated or subsidiary compa-   9
nies of the Assured but only to the extent that the liabilities of such companies are uninsured.          10

**VESSEL**

The Underwriters will indemnify the Assured in respect of the matters set forth at lines 46 through 76, below, subject    11
to all other terms hereof, in respect of the <u>as per declarations</u> of <u>as per declarations</u> gross registered tons (hereinafter, the   12
"Vessel"). If more than one Vessel is named, all clauses shall apply as though a separate Policy had been issued for      13
each Vessel.                                                                                              14

**DURATION OF RISK**

This Policy attaches on <u>December 31, 2014, at 12:01 AM o'clock Eastern Standard</u> time and expires on   15
<u>December 31, 2016, at 12:01 AM o'clock Eastern Standard time</u>.  Should the Vessel be at sea at the expiration of   16
this Policy, or in distress, or at a port of refuge or call, she shall be held covered until she reaches her port of destina-   17
tion, provided prior notice be given to the Underwriters and provided the Assured agrees to any amended terms of   18
cover and additional premium if required by the Underwriters.                                             19

**LIMIT OF LIABILITY**

Liability hereunder in respect of all consequences of any one casualty or occurrence, including defense costs, shall not   20
exceed the sum of <u>$ As</u> less any applicable deductible, regardless of how many separate injuries or   21
claims arise out of such casualty or occurrence.                                                          22

**DEDUCTIBLES**

There shall be deducted from the total amount payable by the Underwriters with respect to all claims, including costs    23
of defense and expenses, arising from any one casualty or occurrence:                                     24
       a) <u>$ As per Declarations</u> with respect to those claims for loss of life, bodily injury or illness, and   25
       b) <u>$ As per Declarations</u> with respect to all other claims;   26
PROVIDED, HOWEVER, that the maximum deductible for any one casualty or occurrence shall not exceed the   27
greater of the foregoing amounts.                                                                         28

STARR MARINE
A Member of Starr Companies

**PREMIUM**

The Underwriters are to be paid premium of <u>$ As per Declarations</u> for this insurance, payable as follows:          29

**RETURN PREMIUM**

If the Vessel is sold, demise chartered or requisitioned this Policy shall terminate on the date and at the hour when          32
such disposition of the Vessel is effective and the Underwriters will return premium on a pro rata daily net basis for the          33
unexpired term.  If the Policy is canceled by the Assured, the Underwriters will return premium on the usual short rate          34
daily net basis for the unexpired term.  If the Policy is canceled by the Underwriters they will return premium on a pro          35
rata daily net basis for the unexpired term.          36

~~**CANCELLATION**~~

~~The Policy may be canceled by the Underwriters or by the Assured upon thirty (30) days written or telegraphic notice.~~          37
~~The Underwriters may send notice to the Assured's last address known to them, or to the broker of record at the time~~          38
~~when notice is given. At noon local time at the place of the sending of the notice on the fifteenth day after such notice~~          39
~~shall have been mailed, telegraphed or telexed, the Policy shall cease to be in effect.  The Policy may also be canceled~~          40
~~at any time by mutual agreement of the Assured and the Underwriters.~~          41

**TRADING WARRANTY**

Warranted that the Vessel shall be confined to          42
<u>As per Declarations</u>          43

**INDEMNITY**

Subject to all exclusions and other terms of this Policy the Underwriters agree to indemnify the Assured for any sums          46
which the Assured, as owner of the Vessel, shall have become liable to pay, and shall have paid, in respect of any          47
casualty or occurrence during the currency of the Policy but only in consequence of any of the matters set forth here-          48
under PROVIDED, however, that if the interest of the Assured is or includes interests other than owner of the Vessel,          49
the Underwriters' liability shall not be greater than if the Assured was the owner entitled to all defenses and limit-          50
ations of liability to which a shipowner is entitled:          51

    (1) Loss of life and bodily injury or illness: but excluding amounts paid under any compensation act.          52

    (2) Hospital, medical or other expenses necessarily and reasonably incurred with respect to loss of life, bodily injury          53
to, or illness of, any person.          54

    (3) Crew member burial expense not to exceed $1,000 per person.          55

    (4) Repatriation expenses of crew member, excepting such as arise from the termination of any agreement in          56
accordance with its terms, or the sale of the Vessel or other voluntary act of the Assured. Wages may be included          57
in such expenses when a statute requires payment of wages while awaiting and during repatriation.          58

    (5) Damage to any fixed or movable object or property, howsoever caused, excluding however, damage to          59
another vessel or any property aboard it caused by collision with the Vessel.          60

    (6) Cost or expense of, or incidental to, any attempted or actual removal or disposal of obstructions, wrecks or their          61
cargoes under statutory power or otherwise pursuant to law, PROVIDED, however, that there shall be deducted from          62
such claim for cost or expenses, the value of any salvage from the wreck inuring to the benefit of the Assured or any          63
subrogee thereof.          64

---

**STARR MARINE**
A Member of Starr Companies

(7) Fines and penalties, including expenses reasonably incurred in avoiding or mitigating same, for the violation of      65
any of the laws of the United States, or any State thereof, or of any foreign country; PROVIDED, however, that the      66
Underwriters shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or      67
indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise      68
the highest degree of diligence to prevent a violation of such laws.      69

(8) Extraordinary expense arising from an outbreak of contagious disease, PROVIDED that the Vessel was not      70
ordered by anyone acting on behalf of the Assured to proceed to a port where such disease was known or supposed      71
to exist.      72

(9) Costs incurred with the written consent of the Underwriters, or reasonably incurred prior to receipt of advices      73
from Underwriters, for investigation and defense of claims, valid or not, within the scope of the Policy.      74

(10) Port charges incurred solely for the purpose of putting in to land an injured or sick seaman or passenger, and the      75
net loss to the Assured in respect of bunkers, insurance, stores and provisions as the result of the deviation.      76

## EXCLUSIONS

Notwithstanding anything to the contrary elsewhere herein the Underwriters will not indemnify the Assured in      77
respect of any of the following matters:      78

(A) Any liability assumed under contract or otherwise.      79

(B) Liability imposed on the Assured as punitive or exemplary damages, however described.      80

(C) Any liability for any loss of, damage to, or expense in respect of, cargo or other property (including baggage and      81
    personal effects of passengers, mail and parcel post) carried, to be carried or which had been carried on board      82
    the Vessel, EXCEPT, HOWEVER, such liability imposed under the doctrine of cross liabilities for cargo on      83
    board the Vessel for which there is no coverage under any other policy held by the Assured.      84

(D) Any liability or claim for, or any loss of, damage to, or expense in respect of property owned, leased, chartered      85
    or hired by the Assured.      86

(E) Engagement in unlawful trade or performance or an unlawful act with knowledge of the Assured.      87

(F) Cancellation or breach of any contract.      88

(G) Bad debts.      89

(H) Fraud, dishonesty or insolvency of the Assured, its agents or others.      90

(I) Salvage charges, special charges, general average, freight, detention, demurrage or loss of use, of the Vessel.      91

(J) Any liability for, or any loss, damage, or expense arising from or accruing by reason of the towage or any other      92
    vessel or craft other than emergency towage or a vessel in distress at sea to a port or place of safety, EXCEPT,      93
    HOWEVER, this exclusion shall not apply to claims for loss of life, or bodily injury to, or illness or any person.      94
    Emergency towage is deemed to be towage undertaken as a salvage service while the Vessel is on a voyage wholly      95
    unrelated to performance of such service.      96

(K) Any liability for, or any loss, damage or expense while engaged in, or resulting from, any commercial diving      97
    operation or service from the Vessel, EXCEPT, HOWEVER, any liability incurred when the Vessel's crew is      98
    engaged in inspection or repair of the Vessel which could not be deferred until commercial divers were available.      99

STARR MARINE
A Member of Starr Companies

(L) Any liability for, or any loss, damage, injury or expense resulting from nuclear radiation, fission or fusion, whether such loss, damage, injury or expense has been caused directly or indirectly or has arisen from any matter for which the Assured has responsibility or otherwise, and whether the nuclear event be controlled or un-controlled. 100 101 102 103

(M) Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of any one or more of the following: 104 105

1) Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or national-ization, or the consequences thereof or any attempt thereat, whether in time or peace or war and whether lawful or otherwise; 106 107 108

2) Any weapon of war employing atomic or nuclear fission and / or fusion or other reaction or radioactive force or matter, or by any mine, bomb or torpedo; 109 110

3) Hostilities or warlike operations (whether there by a declaration or war or not), but the phrase "hostilities or warlike operations (whether there by a declaration of war or not)," shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object, stranding, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other vessel involved herein, is performing) by a hostile act by or against a belligerent power; for the purpose of the foregoing, power includes any authority maintaining naval, military or air forces in association with a power.  In addition to the  foregoing exclusions, this in-surance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not the Assured's liability therefore is based on negligence or otherwise, and whether in time of peace or war.  The embarkation, carriage and disembarkation of troops, combatants, or material of war, or the placement of the watercraft in jeopardy as an act or measure of war taken in the actual process or a military engagement, with or without the consent of the Assured, shall be considered a warlike act for the purposes of this Policy. 111 112 113 114 115 116 117 118 119 120 121 122 123

4) The consequences of civil war, revolution, rebellion, insurrection, military or usurped power, the imposition of martial law, or civil strife arising therefrom, or piracy; or from any loss, damage or expense caused by or resulting directly or indirectly from the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, ideological or terrorist purposes, and whether any loss, damage or expense resulting therefrom is accidental or intentional. 124 125 126 127 128

5) Malicious acts or vandalism, strikes, lockouts, political or labor disturbances, civil commotions, riots, or the acts of any person or persons taking part in such occurrence or disorder. 129 130

(N) Any liability for, or any loss, damage, cost, expense, fine or penalty or any kind or nature whatsoever, whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence or, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of substances or any kind or nature whatsoever. 131 132 133 134

## GENERAL CONDITIONS

**NOTICE OF LOSS**

It is a condition of this Policy that the Assured give prompt notice to the Underwriters of any casualty or occurrence which may result in a claim under this Policy. 135 136

**FORWARDING OF PROCESS**

It is a condition of this Policy that the Assured forward to the Underwriters, promptly upon receipt, copies of all 137

communications, legal process and pleadings relating to any casualty or occurrence which may result in a claim          138
under this Policy.          139

## SETTLEMENT OF CLAIMS

1) It is a condition of the Policy that the Assured shall not make any admission or nor agree to assume any liability          140
either before or after any casualty or occurrence which may result in a claim under this Policy          141

2) It is a condition of this Policy that the Assured shall take such steps to minimize and avoid liability, before and after          142
any casualty or occurrence, as would be taken by a prudent uninsured person.          143

3) The Underwriters shall have the option of naming the attorneys who shall represent the Assured in the prose-          144
cution or defense of any litigation or negotiations between the Assured and third parties concerning any claim          145
covered by this Policy, and in any event, the Underwriters shall direct the progress of such litigation or nego-          146
tiations.          147

4) If the Assured shall fail, or refuse, to settle any claim as authorized by the Underwriters, the liability of the Under-          148
writers shall be limited to the amount for which settlement could have been made plus legal fees and disbursements          149
incurred to the date the Assured fails or refuses to settle any such claim, less the amount of any deductible provided          150
for in this Policy.  If thereafter any amount is recovered against the Assured in excess of the amount of any settle-          151
ment authorized by the Underwriters (less the deductible), such excess amount, plus any additional legal fees and          152
disbursements, shall be solely for account of the Assured.          153

## CLAIM COOPERATION

The Assured shall aid in securing information, evidence, obtaining witnesses, and shall cooperate with the Under-          154
writers in the defense of any claim or suit or in the appeal from any judgment, in respect of any casualty or occurrence          155
as hereinbefore provided.          156

## SUBROGATION

The Underwriters shall be subrogated to all the rights which the Assured may have against any other person or entity,          157
in respect of any payment made under this Policy, to the extent of such payment, and the Assured shall, upon the          158
request of the Underwriters, execute and shall deliver such instruments and papers as the Underwriters shall require          159
and do whatever else is necessary to secure such rights. In the event of any agreement or act, past or future, by the          160
Assured, whereby any right of recovery of the Assured against any person or entity is released or lost to which the          161
Underwriters on payment of loss would be entitled to subrogation, but for such agreement or act, the Underwriters          162
shall be relieved of liability under this Policy to the extent that their rights of subrogation have been impaired          163
thereby; in such event the right of the Underwriters to retain or collect any premium paid or due hereunder shall          164
not be affected.  The Underwriters shall not be liable for the costs and expenses of prosecuting any claim or suit          165
unless the same shall have been incurred with the written consent of the Underwriters, or the Underwriters shall          166
be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay          167
and that such costs and expenses were reasonably and properly incurred, such costs and expenses being subject to          168
the deductible.  The Underwriters shall be entitled to take credit for any profit accruing to the Assured by reason          169
of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover          170
for their own account from third parties any damage that may be provable by reason of such negligence or          171
wrongful act.          172

## OTHER INSURANCE

Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim          173
which would otherwise have been paid by the Underwriters under this Policy, there shall be no contribution or par-          174
ticipation by the Underwriters on the basis or excess, contributing, deficiency, concurrent, or double insurance          175
or otherwise.          176

**ASSIGNMENTS**

Neither this Policy nor any claim or demand against the Underwriters under this Policy shall be assigned or trans-   177
ferred, and no person, excepting a legally appointed Receiver of the property of the Assured, shall acquire any right   178
against the Underwriters by virtue of this insurance without the express consent of the Underwriters endorsed hereon.   179
This Policy shall cease to be in effect 10 days after appointment of a Receiver, Trustee or any other transferee of the   180
Assured's assets.   181

**TIME FOR SUIT CLAUSE**

No action shall lie against the Underwriters for the recovery of any loss sustained by the Assured unless such action   182
be brought against the Underwriters within one year after the final judgment or decree is entered in the litigation   183
against the Assured, OR in case the claim against the Underwriters accrues without the entry of such final judgment   184
or decree, unless such action be brought within one year from the date of the payment by the Assured of such claim,   185
PROVIDED, however, that where such limitation of time is prohibited by the law of the State wherein this Policy   186
is issued, then, and only in that event, no action under this Policy shall be sustainable unless commenced within the   187
shortest limitation permitted under the law  of such State.   188

**COLLISION LIABILITY COVERAGE (Applicable to Barges only)**

Notwithstanding lines 81 through 84 and 92 through 96 of Protection and Indemnity Clauses (AIMU - 23), it is hereby understood and agreed that:

(a)   if the vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in the consequence of the vessel being at fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective subscriptions hereto bear to the Protection and Indemnity Limit of Liability for any one casualty;

(b)   in cases where, with the consent in writing of a majority (in amount) of subscribing Underwriters hereto, the liability of the vessel has been contested, or proceedings have been taken to the limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels become limited by law, claims under the Collision Liability clause shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled to pay to the owners or charterers of the other of such vessels  such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision.

The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of subscribing Underwriters interested: the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator,  or of any two of such three arbitrators, appointed as above, to be final and binding.

Providing always that this clause shall in no case extend to any such sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:

(a)   the discharge spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or descriptions whatsoever;

(b)   cargo or other property on or the engagements of the vessel;

Provided further that exclusion (a) above shall not apply to injury to other vessels or property thereon except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (a) above.

**STARR MARINE**
A Member of Starr Companies

## COLLISION AND TOWER'S LIABILITY COVERAGE (Applicable to Tugs only)

Notwithstanding lines 81 through 84 and 92 through 96 of Protection and Indemnity Clauses (AIMU - 23), it is hereby understood and agreed that:

I)    if the vessel shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow); or shall strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any other loss or damage to her tow or to the freight thereof or to the property on board. and the Assured, or the Surety, in consequence of the insured vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their subscriptions hereto bear to the Protection and Indemnity Limit of Liability, for any one casualty;

II)   in cases where the liability of the vessel has been contested or proceedings have been taken to limit liability, with the consent (in writing) of the majority of the subscribing Underwriters hereto, Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels become limited by law, claims under the Collision and Tower's Liability clause shall be settled on the principle of Cross-Liabilities, as if the owners or charterers of each vessel had been compelled to pay to the owners or charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such casualty.

The principles involved in this clause shall apply to the case where two or more of the vessels involved are the property, in part or in whole, of the same owners or charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of subscribing Underwriters hereto: the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator,  or of any two of such three arbitrators, appointed as above, to be final and binding.

Providing always that this Collision and Tower's Liability clause shall in no case extend to any such sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:

I)    loss, damage, or expense to vessel(s) in tow owned (other than vessel(s) bareboat chartered to others), bareboat chartered, managed or operated by the Assured and/or its affiliated and/or subsidiary companies and/or corporations, and to cargo, owned by the Assured and/or its affiliated and/or subsidiary companies and/or corporations, on board vessel(s) in tow of the vessel(s) hereby insured; or

II) (a)  cargo, baggage or engagements of the insured vessel(s);

     (b)  the discharge spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or descriptions whatsoever;

Provided further that exclusion (b) above shall not apply to injury to other vessels or property thereon except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (a) above.

## STARR MARINE
A Member of Starr Companies

*AMERICAN HULL INSURANCE SYNDICATE*                                    *SP-22B*
**WAR RISK PROTECTION & INDEMNITY CLAUSES**
**JANUARY 18, 1970**

To be attached to and form a part of Policy No. **MASIHBN00012714** of the **Starr Indemnity & Liability Company**

Insuring **Cashman Equipment Corporation and As Attached**

A. This Insurance is also to cover the liability of the assured for Protection and Indemnity Risks excluded from Marine Protection and Indemnity Policies commonly issued by stock companies in the United States by the following or substantially similar F.C. & S. Clause:

"Notwithstanding anything to the contrary contained in this policy, no liability attaches to the company, directly or indirectly, for or in respect of any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt threat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines or war, whether or enemy or friendly origin; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability therefor is based on negligence or otherwise, and whether before or after a declaration of war."

B. This insurance includes liability of the assured arising out of strikes, riots and civil commotions and for contractual repatriation expenses of any member of the crew as a result of perils excluded by the aforesaid F.C. & S. Clause.

C. The Underwriters agree to accept the same percentage interest under these clauses as accepted under the Hull War Risks and Strikes Clauses.

D. The liability of the Underwriters under these clauses in respect of any one accident or series of accidents arising out of the same casualty shall be limited to the Amount Insured Hereunder.

E. Claims for which the Underwriters shall be liable under these clauses shall not be subject to any deduction.

F. This Protection and Indemnity Insurance shall terminate automatically at the same time as the insurance afforded by the Hull War Risks and Strikes Clauses and upon the terms and conditions contained in the Automatic Termination and Cancellation provisions of said Clauses.

G. Notwithstanding the provisions of Clause F, in the event of loss or shipwreck of the vessel from any cause prior to the natural expiry time or automatic termination of this policy, this insurance shall continue to cover the liability of the assured to the crew of the insured vessel, subject to its terms and conditions and at an additional premium if so required by Underwriters, until the crew shall be either discharged or landed at a port or place to which the owners or charterers are obliged to bring them.

H. Notwithstanding any of the foregoing provisions all liabilities covered by the Second Seamen's form of policy are excluded from this insurance.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**



**ATTACHED TO AND FORMING PART OF POLICY NO.:  <u>MASIHBN00012714</u>.**

**OF THE:  <u>Starr Indemnity & Liability Company</u>.**

**ISSUED TO:  <u>Cashman Equipment Corporation and As Attached</u>.**

---

### EMPLOYMENT-RELATED PRACTICES EXCLUSION

It is hereby noted and agreed that the following exclusion is added to the above captioned policy:

"Bodily Injury" arising out of any refusal to employ, termination of employment, coercion, demotion, evaluation, re-assignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts, omissions, or consequential "bodily injury" as a result of the above.

"Personal Injury" arising out of any refusal to employ, termination of employment, coercion, demotion, evaluation, re-assignment, discipline, defamation, harassment, humiliation, discrimination or other employment practices, policies, acts, omissions; or consequential "personal injury" as a result of the above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

### CREW AND EMPLOYEE EXCLUSION

Notwithstanding anything to the contrary contained herein, it is hereby understood and agreed that this policy shall not apply to any liability arising out of bodily injury, loss of life, or personal injury to any:

1) captain or crewmember of any vessel insured hereunder; nor
2) employee of the Named Assured.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

*APPLICABLE TO ALL SECTIONS*



**American Institute**
  (July 1, 1972)                                                                                                        **38J**


## AMERICAN INSTITUTE TRADE WARRANTIES

1.        Warranted no port or place on the Eastern Coast of North America, its rivers or adjacent island

  (a)        north of 52  10' N. Lat and west of 50 W. Long.

  (b)        in the Gulf of St. Lawrence, its connecting waters and the St. Lawrence River, in the area bounded by lines drawn between Battle Harbour / Pistolet Bay; Cape Ray / Cape North; Port Hawkesbure / Port Mulgrave; and Baie Comeau / Matane, between December 21st and April 30th, both days inclusive.

  (c)        west of Baie Comeau, but not West of Montreal, between December 1st and April 30th, both days inclusive.


2.        Warranted no Great Lakes or St. Lawrence Seaway or St. Lawrence River west of Montreal.

3.        Warranted no port or place in Greenland or its adjacent waters.

4.        Warranted no port or place on the Western Coast of North America, its rivers or adjacent islands, north of 54 30''N. Lat. Or west of 130 50' W.Long; except the port of Ketchikan, Alaska, provided,

  (a)        that a qualified pilot having knowledge of local waters be on duty while the Vessel is in waters north of 54 30' N. Lat. and east of 132  W. Long. And

  (b)        that the Vessel be equipped with operating Gyro Compass, Radio Direction Finder, Fathometer and Radar.


5.        Warranted no Baltic sea (or adjacent waters east of 15  E. Long.);

  (a)        north of line between Mo and Vaasa between November 15th and May 5th, both days inclusive.

  (b)        east of a line between Viipuri (Vyborg) and Narva between November 21st and May 5th, both days inclusive.

  (c)        north of a line between Stockholm and Tallinn between December 15th and April 15th, both days inclusive.

  (d)        east of 22  E. Long. And south of 59  N. Lat. Between December 15th and April 15th, both days inclusive.


6.        Warranted not north of 70  N. Lat. Except when proceeding directly to or from any port or place in Norway or Kola Bay.

7.        Warranted no Bering Sea, no East Asian waters north of 46  N. Lat. And no port or place in Siberia except Vladivostock and/or Nakhodka.

8.        Warranted no Kerguelen or Croset Island, nor waters south of 50  S. Lat., except port or places in Patagonia, Chile and Falkland Islands, but liberty is given to enter waters south of 50  S. Lat., if proceeding to or from port or places not excluded by this warranty.

9.        Warranted not to sail with Indian Coal as cargo: --

  (a)        between March 1st and June 30th, both days inclusive

  (b)        between July 1st and September 30th, both days inclusive, except to port in Asia, not west of Aden nor east of or beyond Singapore.


**CL A210**

---



ATTACHED TO AND FORMING PART OF POLICY NO.:  <u>MASIHBN00012714</u>.

OF THE:  <u>Starr Indemnity & Liability Company</u>.

ISSUED TO:  <u>Cashman Equipment Corporation and As Attached</u>.

## ADDITIONAL CONDITIONS, WARRANTIES AND EXCLUSIONS

1) **<u>BOOM CLAUSE:</u>**   As respects all vessels equipped with derricks and/or cranes insured under this policy, no claim shall be payable under any section of this policy if occasioned by the weight of any load exceeding the lifting or supporting capacity of any crane and/or derrick boom and/or jib as established by the manufacturer.

2) **<u>NO RELEASE TO TOWERS WARRANTY:</u>**  It is hereby warranted and the Named Assured agrees that the Named Assured shall not waive subrogation against, nor enter into any contract that holds harmless, any vessel or other entity engaged in the towing of vessels owned or operated by or on behalf of the Named Assured.

3) **<u>NO RELEASE TO STEVEDORES WARRANTY</u>**:  It is hereby warranted and the Named Assured agrees that the Named Assured shall not waive subrogation against, nor enter into any contract that holds harmless, any stevedore or other entity engaged in the loading or offloading vessels.

4) **AIMU  CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION <u>CLAUSE</u> <u>(March 1, 2003)</u>:**

   **This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

   In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act  involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5) **<u>INCLUSION OF ADDITIONAL ASSUREDS OR LOSS PAYEES:</u>**  Wherever additional assureds or loss payees are added to this policy it is specifically agreed:

   A)  Such additional assureds or loss payees are included only with respect to such activities insured by this policy as would exist in the absence of the naming of additional assureds or loss payees and coverage hereunder shall in no way be considered extended by the inclusion of additional assureds or loss payees.

   B)  The inclusion of additional assureds or loss payees in no way increase the limit of liability hereunder.

   C)  In the event of cancellation or change in policy coverage unless specifically endorsed in writing to the contrary hereon, no obligation is imposed on this company to send notice of cancellation or change of coverage to an additional assured or loss payee and notice to the original named assured shall discharge all obligations of this company hereunder.  This company shall not be required to notify additional named assured or loss payees of any cancellation received from the original assured hereon.

6) **<u>AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION WITH U.S.A. BuyBack (3/1/03)</u>**

   **This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

   1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from



1.1    ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

1.2    the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

1.3    any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

1.4    the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction**,** nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

7)    **THIRTY DAYS' NOTICE OF CANCELLATION:**  It is hereby understood and agreed that either party may cancel this policy by giving thirty (30) days' notice (except ten (10) in the event of non-payment of premium) in writing; if at the option of this Company pro-rata rates, if at the request of the Assured short rates, will be charged -- and arrival.

8)    **AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE:**  Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**



ATTACHED TO AND FORMING PART OF POLICY NO.:  <u>MASIHBN00012714</u>.

OF THE:  **Starr Indemnity & Liability Company.**

ISSUED TO:  <u>Cashman Equipment Corporation and As Attached</u>.

---

### DIFFERENCE IN CONDITIONS("DIC")/DIFFERENCE IN LIMITS OF LIABILITY ("DIL")

In consideration of the premiums set forth below, these Assurers agree that the vessels scheduled in this policy are also insured under admitted Hull and Machinery and Protection & Indemnity policies issued to to **CHM Maritime, S.A.P.I. de C.V.** by Mapfre Tepeyac S.A., **Cashman Canada, Inc.** by Starr Insurance and Reinsurance Limited and **Cashman Caspian, LLP** by JSC Insurance Company through or at the direction of Starr Marine, a division of Starr Indemnity & Liability Company.

Notwithstanding anything to the contrary, coverage hereunder shall be strictly limited to

1) the Difference in Conditions; and/or

2) the Difference in Limits

between the terms and limits of this "Master" policy and the terms and limits of insurance provided under such locally admitted policies.  The coverage provided hereunder shall not apply or contribute to the payment of any loss until the amount of such local insurance shall have been exhausted, it being understood and agreed that under this Master Policy, the Assured is to be compensated to the extent of the difference between the amount collectible from such admitted insurance and the amount of the actual loss otherwise recoverable hereunder. Any payments made under any locally admitted policies shall be applied toward the exhaustion of the Limits of Liability of this Master Policy as if the payments had been made under this Master Policy.

However, notwithstanding the foregoing, it is understood and agreed that coverage under this endorsement shall not be construed in any way or manner to expand coverage for nor increase any Limits of Liability beyond that which is specified in the Master Policy and/or any other endorsement attached to the Master Policy, including but not limited to any exclusion of risk specified including but not limited to any exclusion of risk specified, as follows:

- AIMU Extended Radioactive Contamination Exclusions Clause hall apply unless specifically accepted in writing elsewhere in the Master Policy
- AIMU Nuclear Exclusion Clause - shall apply unless specifically accepted in writing elsewhere in the Master Policy
- AIMU U.S. Economic and Trade Sanctions Clause attached to the Master Policy which shall apply and govern in all cases.
- AIMU Chemical, Biological, Bio-Chemical, and Electromagnetic Clause

**ALL OTHER TERMS, LIMITATIONS, CONDITIONS AND EXCEPTIONS REMAINING UNCHANGED.**



**ATTACHED TO AND FORMING PART OF POLICY NO.: <u>MASIHBN00012714</u>.**

**OF THE: <u>Starr Indemnity & Liability Company</u>.**

**ISSUED TO: <u>Cashman Equipment Corporation and As Attached</u>.**

---

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### <u>TERRORISM EXCLUSION (TRIA 2002) REVISED</u>

**This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.**

For purposes of this endorsement and in compliance with the Terrorism Risk Insurance Act of 2002, an "act of terrorism shall mean:

(1) Act of Terrorism –
   (A) Certification. – The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States --
      (i) to be an act of terrorism;
      (ii) to be a violent act or an act that is dangerous to –
         (I) human life;
         (II) property; or
         (III) infrastructure;
      (iii) to have resulted in damage within the United States, or outside of the United States in the case of –
         (I) an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];
         (II) the premises of a United States mission; and
      (iv) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
   (B) Limitation. -- No act shall be certified by the Secretary as an act of terrorism if –
      (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
      (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
   (C) Determinations Final. – Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
   (D) Nondelegation. – The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY ARE THE SAME.

---

**ATTACHED TO AND FORMING PART OF POLICY NO.:  <u>MASIHBN00012714</u>.**

**OF THE:  <u>Starr Indemnity & Liability Company</u>.**

**ISSUED TO:  <u>Cashman Equipment Corporation and As Attached</u>.**

## <u>ANNUAL REVIEW CLAUSE ENDORSEMENT (MULTI-YEAR POLICY)</u>

In consideration of the premium charged, it is hereby understood and agreed that the Company shall retain the right to exercise an annual review of this policy for the purposes of assessing continuation of the coverage, terms and conditions, rates, and premiums hereunder.  However, the Company shall only be entitled to exercise its right of non-renewal or amend such policy terms and conditions, rates, or premiums, in the event of one or more of the following:

A)  a material change in the nature and/or scope of the Assured's operations insured hereunder;

B)  the unavailability of adequate treaty reinsurance terms or capacity to allow this policy to continue based on the terms and conditions of this policy at <u>**December 31, 2015**</u>.  However, the rates and premium for this multi-year policy shall not be affected by a change in the Company's treaty reinsurance cost.

C)  the Net Incurred Loss Ratio for "this policy" exceeds fifty percent (50%).  For the purposes of this policy, Net Incurred Loss Ratio shall be determined by dividing total Paid and Outstanding losses (including incurred expenses) by the total Net Premium;

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

# STARR MARINE
A Member of Starr Companies

**ENDORSEMENT NO.:  1**                            **EFFECTIVE: 12:01 AM December 31, 2015.**

**ATTACHED TO AND FORMING PART OF POLICY NO.:  MASIHBN00012714.**

**OF THE:  Starr Indemnity & Liability Company.**

**ISSUED TO:  Cashman Equipment Corporation and As Attached.**

It is hereby understood and agreed that in accordance with the Annual Review Clause Endorsement (Multi-Year Policy), and in consideration of an Additional Premium of REDACTED this policy is renewed for the period December 31, 2015, 12:01 AM EST to December 31, 2016, 12:01 AM EST.

It is further understood and agreed that effective December 31, 2015, 12:01 AM EST, the Declarations page is replaced with the attached revised Declarations page and shall include Section III – Breach of Warranty coverage as outlined therein.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**AUTHORIZED SIGNATURE**
**STARR INDEMNITY & LIABILITY COMPANY**



# DECLARATIONS

POLICY NUMBER:          **MASIHBN00012715**

NAMED ASSURED:          Cashman Equipment Corporation
                        Servicio Marina Superior, LLC
                        CHM Maritime, S.A.P.I. de C.V.
                        Cashman Caspian, LLP
                        Cashman Canada, Inc.
                        Cashman de Colombia S.A.S.

ADDRESS:                41 Brooks Drive
                        Braintree, MA 02184

POLICY PERIOD:          From:     December 31, 2015, 12:01 A.M. Eastern Standard Time
                        To:       December 31, 2016, 12:01 A.M. Eastern Standard Time

COVERAGES:              Section I –   Hull and Machinery
                        Section II –  Protection & Indemnity incl. Collision & Tower's Liability
                        Section III – Breach of Warranty

PREMIUM:                REDACTED – US Observers Endorsement (11 @ REDACTED)
                        REDACTED – Section III Breach of Warranty

                        Locally Admitted Policies (incl. taxes & fees) Billed Separately
                        CHM Maritime, S.A.P.I. de C.V.       Hull:   REDACTED
                        (Collected in US)                    P&I:

                        Cashman Canada, Inc.                 Hull:
                                                             P&I:

                        Cashman Caspian, LLP                 Hull:
                                                             P&I:

INSURED VESSELS:        **CHM Maritime, S.A.P.I. de C.V.**
                        Tug "Ocean Raider 17"
                        Tug "Atlas"
                        Tug "Marina Orion"
                        Tug "Marina Polaris"
                        Tug "Miss Molly"
                        "JMC-2508"
                        "JMC-2509"
                        "JMC-2511"
                        "JMC-2515"
                        "JMC-2516"
                        "JMC-3003"
                        "JMC-3009"

                        **Cashman Caspian, LLP**
                        "JMC-24"
                        "JMC-44"
                        "JMC-244"
                        "JMC-245"



**Cashman Canada, Inc.**
"JMC-185"

*Section I - HULL AND MACHINERY*

| | Vessel | Agreed Value | Deductible | Annual Rate Incl. War | Annual Premium |
|---|---|---|---|---|---|
| | | | | *Rates & premiums include fees and taxes* | |
| 1 | Tug "Ocean Raider 17" | $4,200,000 | $50,000 | REDACTED | |
| 2 | Tug "Atlas" | $8,000,000 | $100,000 | | |
| 3 | Tug "Marina Orion" | $4,000,000 | $50,000 | | |
| 4 | Tug "Marina Polaris" | $4,000,000 | $50,000 | | |
| 5 | Tug "Miss Molly" | $10,500,000 | $100,000 | | |
| 6 | "JMC-2508" | $2,900,000 | $50,000 | | |
| 7 | "JMC-2509" | $2,900,000 | $50,000 | | |
| 8 | "JMC-2511" | $2,900,000 | $50,000 | | |
| 9 | "JMC-2515" | $2,900,000 | $50,000 | | |
| 10 | "JMC-2516" | $2,900,000 | $50,000 | | |
| 11 | "JMC-3003" | $5,000,000 | $50,000 | | |
| 12 | "JMC-3009" | $5,000,000 | $50,000 | | |
| 13 | "JMC-24" | $5,000,000* | $150,000 | | |
| 14 | "JMC-44" | $5,000,000* | $150,000 | | |
| 15 | "JMC-244" | $1,450,000* | $150,000 | | |
| 16 | "JMC-245" | $1,300,000* | $150,000 | | |
| 17 | "JMC-185" | $1,700,000 | $ 50,000 | | |

*Represents 50% quota share amount.

DEDUCTIBLE: As Per Schedule of Vessels

SUBJECT TO: Taylor Hull Form 1953 (Rev. 70), with lines 39 through 60 deleted;
American Institute Hull War Risks and Strikes Clauses (9/29/09);

**Applicable to Cashman Caspian, LLP**
Notwithstanding the forgoing, in the event of a single occurrence involving more than one vessel scheduled above, the total deductible for that occurrence under this policy shall not exceed $250,000, all vessels combined.

Deductible to apply in the event of TL or CTL

Navigation limited to Port Risk Only

**Applicable to Cashman Canada, Inc.**
Perils amended to include "theft" and "theft of entire vessel"

EXCLUSION: Collision Liability



*Section II – PROTECTION & INDEMNITY/COLLISION & TOWER'S LIABILITY*

| | Vessel | Annual Premium |
|---|---|---|
| | | *Premiums include fees and taxes* |
| 1 | Tug "Ocean Raider 17" | REDACTED |
| 2 | Tug "Atlas" | |
| 3 | Tug "Marina Orion" | |
| 4 | Tug "Marina Polaris" | |
| 5 | Tug "Miss Molly" | |
| 6 | "JMC-2508" | |
| 7 | "JMC-2509" | |
| 8 | "JMC-2511" | |
| 9 | "JMC-2515" | |
| 10 | "JMC-2516" | |
| 11 | "JMC-3003" | |
| 12 | "JMC-3009" | |
| 13 | "JMC-24" | |
| 14 | "JMC-44" | |
| 15 | "JMC-244" | |
| 16 | "JMC-245" | |
| 17 | "JMC-185" | |

*Represents 50% quota share amount.

LIMIT OF LIABILITY:     $1,000,000. any one occurrence, Combined Single Limit, except $500,000 part of
$1,000,000 with respect to vessels 13-16.

DEDUCTIBLES:            **Vessels 1-12**
Bodily Injury
$5,000 any one occurrence

All Other Claims
$50,000 any one occurrence

**Vessels 13-16**
Bodily Injury
$25,000. any one occurrence, each vessel

All Other Claims
$150,000. any one occurrence, each vessel

**Vessel 17**
Bodily Injury
$5,000 any one occurrence

All Other Claims
$50,000 any one occurrence

CONDITIONS:            AIMU 23 Protection & Indemnity Clauses;
American Hull Insurance Syndicate War Risk Protection & Indemnity Clauses (SP-22B)
Collision & Tower's Liability Endorsement (Tugs);
Collision Liability Endorsement (Barges).
US Observers Endorsement (CHM Maritime only)



| EXCLUSIONS: | Employment Related Practices;<br>Employees and crew of the Named Assured (except US observers as noted elsewhere) |
|---|---|

*Section III – BREACH OF WARRANTY INSURANCE*

| SUBJECT TO: | American Institute Single Interest Mortgage Form (7-1-63); |
|---|---|

| RATE: | REDACTED against amounts exposed |
|---|---|

| PREMIUM: | REDACTED |
|---|---|

| Vessel | Amount | Mortgagee |
|---|---|---|
| | | |
| "Ocean Raider 17" | REDACTED | Banc of America Leasing |
| "Marina Polaris" | | Banc of America Leasing |
| JMC-2508 | | Banc of America Leasing |
| JMC-2509 | | Banc of America Leasing |

*APPLICABLE TO ALL SECTIONS*

| RATES/PREMIUMS: | Except where noted, all premium is to be billed and collected locally in Canada and Kazakhstan as applicable.<br>All premiums are Cancelling Returns Only (CRO)<br>Full Premium If Lost (FPIL) |
|---|---|

| CONDITIONS: | Difference in Conditions/Difference in Limits Endorsement;<br>Additional Conditions, Warranties and Exclusions<br>Annual Review Clause |
|---|---|

| NAVIGATION: | **CHM Maritime, S.A.P.I. de C.V.**<br>American Institute Trade Warranties<br><br>**Cashman Canada, Inc.**<br>Inland and coastal waters of Newfoundland, Canada, between and including St. John's and Bull Arm, not north of 49° N and not east of 52° W.<br><br>**Cashman Caspian, LLP**<br>Port risk only – Port of Bautino, Topaz Base<br><br>Both fleets also subject to current Lloyds' Joint War Risk Committee Listed Areas with respect to war risk coverage afforded hereunder. |
|---|---|

| WARRANTED: | 1)   No release to towers.<br>2)   No release to stevedores. |
|---|---|

| EXCLUSIONS: | TRIA |
|---|---|

**AUTHORIZED SIGNATURE**
**STARR INDEMNITY & LIABILITY COMPANY**

**STARR MARINE**
A Member of Starr Companies

*AMERICAN INSTITUTE*
**SINGLE INTEREST MORTGAGE FORM**
July 1, 1963

**ASSURED**

To be attached to and form a part of Policy No.   **MASIHBN0012715**                                     c

**Starr Indemnity & Liability Company**

Insuring    **Banc of America Leasing**

as Mortgagee, for account of themselves. for the interest described below, said Mortgagee being herein referred to as "the Assured".

**INTEREST**

Upon the interest of the Assured, as mortgagee of the Vessel   **As Per Schedule**
(hereinafter referred to as "the Vessel").

**LOSS PAYABLE**

Loss, if any, payable to Assured or order.

**SUM INSURED**

          **As Per Schedule**                                              Dollars.
Part of  **As Per Schedule**                                              Dollars
insured this interest, being the unpaid principal amount of a valid mortgage held by the Assured on the Vessel, reducing pro rata to the extent of payments made on account of the mortgage indebtedness. This Policy also insures interest earned and unpaid to date of loss, which , however, with the unpaid balances, shall not exceed the sum insured hereunder.

**TERM**

At and from the  **31st**    day of  **December**            20 **15**   , **Eastern Standard**        time
to the        **31st**    day of  **December**            20 **16**   , **Eastern Standard**        time.

**PREMIUM**

These Underwriters to be paid in consideration of this insurance $   **As Per Declarations**
being at the rate of  ___**REDACTED**___ % per annum of the sum initially at risk hereunder.

**CANCELLATION**

This Policy (other than for non-payment of premium) may be cancelled by either party on 30 days' notice in writing. Such notice, when given by these Underwriters, shall be deemed to have been given at such time as written notice shall have been mailed to the Assured at its last known address or telegraphic notice sent thereto. A written or telegraphic notice sent through the brokers who negotiated this Policy or by them, at the request of these Underwriters, shall operate to effect cancellation of this Policy in the same manner as if sent directly by these Underwriters. Net unearned premium to be returned in the event of cancellation  by either party as aforesaid.

In the event of non-payment of premium 30 days after attachment, this Policy may be cancelled by these Underwriters upon five days' written notice being given to the Assured in the form provided for above. Such proportion of the premium, however, as shall have been earned up to the time of such cancellation shall be due and payable; but in the event of payment by these Underwriters of the sum insured hereunder by reason of non-payment by Underwriters of the Hull Policy of a claim asserted thereunder for any liability, loss, damage or expense of, to or in respect of the Vessel occurring or airing prior to cancellation, the full annual premium shall be deemed earned.

**TERMINATION**

Unless otherwise agreed to in writing by these Underwriters, the insurance afforded by this Policy shall terminate in the event that there has been a change, voluntary or otherwise, in the ownership of the Vessel or it has been placed under new management or chartered on a bareboat basis or requisitioned on that basis.

**CONDITIONS OF ATTACHMENT AND DURATION OF RISK**

1.      It is a condition of this insurance that during the term of this Policy:

(a)      the Vessel is covered by policies of insurance on the form and in the amount specified below:
  **As per Declarations**

(b)      the Assured is named as a loss payee in the policies above described, which are herein referred to collectively and separately and defined as "the Hull Policy."

STARR MARINE
A Member of Starr Companies

**RISKS INSURED AGAINST**

2.       This Policy insures only against the non-payment by Underwriters of the Hull Policy, of a claim asserted thereunder for any liability, loss, damage or expense occurring or arising during the term of this Policy, which non-payment results from any act of, or omission by, the assured(s) named in the Hull Policy, or breach of any warranty, express or implied, in the Hull Policy other than breach of the warranty contained in the F.C. & S. Clause thereof;

PROVIDED that such act or omissions or breach of warranty occurred without the consent or privity of the Assured.

**EXCLUSIONS**

3.       The insurance afforded by this Policy does not cover:

(a)       the non-payment of a claim for any liability, loss, damage or expense, or any part thereof:

I.   collectible under the Hull Policy or which would be collectible thereunder except for the insolvency of the underwriters thereon; or

II.  not recoverable under the Hull Policy by reason of any deductible or franchise included therein; or

III. which has been satisfied, repaired or discharged prior to payment of a claim hereunder; or

(b)       any claim of the Assured arising solely out of the insolvency of the owner of the Vessel.

In no event shall these Underwriters indemnify or contribute to, pro rata or otherwise, Underwriters of the Hull Policy.

**CONDITIONS PRECEDENT TO CLAIM**

4.       As a condition precedent to any claim hereunder, unless waived by these Underwriters:

(a)       the underwriters of the Hull Policy must have denied the claim for any liability, loss, damage or expense which is the subject of a claim hereunder, and

(b)       the Assured shall have instituted suit against such Underwriters to collect such claim.

**SUBROGATION OF UNDERWRITERS**

5.(a)     These Underwriters, upon payment of a loss under this Policy, shall, to the extent of such payment, be subrogated to all of the rights of the Assured under the Hull Policy, the Mortgage on the Vessel and any note or bond secured thereby, and under any other instrument taken by the Assured as security for the repayment of the mortgage indebtedness. On the request of these Underwriters, the Assured shall execute and deliver all documents necessary to effect a valid assignment of the said policy, mortgage, note or bond, and any other instrument taken by way of security as aforesaid, and of all the right, title and interest of the Assured therein. Any net sum recovered by theses Underwriters in excess of the amount due to them by reason of their rights of subrogation as aforesaid shall be held for the account of the Assured.

(b)       If any event occurs which does or could give rise to a claim under this Policy, the Assured shall not in any way, whether by act or failure to act, impair these Underwriters' rights of subrogation as aforesaid. Any claim under this Policy shall be reduced to the extent that such rights of subrogation have been impaired.

**NOTICE OF POSSIBLE CLAIM AND SURVEY**

6.(a)     The Assured shall, as soon as practicable, report to these Underwriters any denial of liability by the Underwriters of the policies described in Clause "I" hereof for a claim thereunder which denial could result in a claim under this Policy.

(b)       Whenever requested, the Assured shall arrange for attendance at any hull survey of a surveyor appointed by these Underwriters.

The terms and conditions of this Policy are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived, except provisions required by law to be inserted in this Policy.

Marginal captions are inserted for purposes of convenient reference only and are not to be deemed part of this Policy.

# STARR ✦ MARINE
## A Member of Starr Companies

**ENDORSEMENT NO.:  2**                    **EFFECTIVE: 12:01 AM April 30, 2016.**

**ATTACHED TO AND FORMING PART OF POLICY NO.:  MASIHBN00012715.**

**OF THE:  Starr Indemnity & Liability Company.**

**ISSUED TO:  Cashman Equipment Corporation and As Attached.**

It is hereby understood and agreed that effective April 30, 2016, the locally admitted Hull & Machinery and Protection & Indemnity policies for Cashman Caspian, LLP are cancelled.

It is further understood and agreed that in consideration of a pro-rata Additional Premium of $70,118 and subject to the terms and conditions of this policy, of the following vessels are insured by this policy on a direct basis:

| Vessel | Agreed Value* | Deductible | Annual Rate | Annual Hull Premium | Annual P&I Premium |
|--------|---------------|------------|-------------|---------------------|--------------------|
| "JMC-24" | $5,000,000 | $150,000 | | | |
| "JMC-44" | $5,000,000 | $150,000 | REDACTED | | |
| "JMC-244" | $1,450,000 | $150,000 | | | |
| "JMC-245" | $1,300,000 | $150,000 | | | |

*Starr's share only which represents 50% of total.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

*Lincoln S. Purdy*

**AUTHORIZED SIGNATURE**
**STARR INDEMNITY & LIABILITY COMPANY**

# STARR MARINE
A Member of Starr Companies

**ENDORSEMENT NO.: 3**                **EFFECTIVE: 12:01 A.M., December 31, 2014.**

**ATTACHED TO AND FORMING PART OF POLICY NO.: MASIHBN00012714.**

**OF THE: Starr Indemnity & Liability Company.**

**ISSUED TO: Cashman Equipment Corporation and As Per Policy.**

---

Effective **December 31, 2014** and in consideration of an Additional Premium of REDACTED it is hereby understood and agreed that notwithstanding the crew and employee exclusion contained in this policy, coverage under the AIMU 23 Protection & Indemnity clauses is extended to apply to up to thirteen (13) observers employed by Servicio Marina Superior, LLC while such observers are assigned to vessels owned or operated by CHM Maritime S.A.P.I. de C.V.  Such coverage shall be subject always to a deductible of **$10,000** any one accident or occurrence.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**AUTHORIZED SIGNATURE**
**STARR INDEMNITY & LIABILITY COMPANY**

# STARR MARINE
A Member of Starr Companies

**ENDORSEMENT NO.:  4**                    **EFFECTIVE: 12:01 A.M., December 31, 2015.**

**ATTACHED TO AND FORMING PART OF POLICY NO.:  MASIHBN00012715.**

**OF THE:  Starr Indemnity & Liability Company.**

**ISSUED TO:  Cashman Equipment Corporation and As Per Policy.**

---

## AMENDMENT TO ENDORSEMENT #3

Effective **December 31, 2015** and in consideration of an Additional Premium of REDACTED it is hereby understood and agreed that notwithstanding the crew and employee exclusion contained in this policy, coverage under the AIMU 23 Protection & Indemnity clauses is extended to apply to up to eleven (11) observers employed by Servicio Marina Superior, LLC while such observers are assigned to vessels owned or operated by CHM Maritime S.A.P.I. de C.V.  Such coverage shall be subject always to a deductible of **$10,000** any one accident or occurrence.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**AUTHORIZED SIGNATURE**
**STARR INDEMNITY & LIABILITY COMPANY**